IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOHN DURRELL HOLCOMB,

    Plaintiff,                   No. CIV S-02-2417 LKK KJM P

    vs.

HIGH DESERT STATE PRISON, et al.,

    Defendants.              FINDINGS AND RECOMMENDATIONS

_____/

        Plaintiff is a state prisoner proceeding with an action for violation of civil rights under 42 U.S.C. § 1983. The motion to dismiss or for summary judgment brought by defendants Cloud, Barton, Wilson, Baron, Dunn, Sanders, Crofoot and Hibbits[1] on January 27, 2005, is before the court.

/////
/////
/////
/////

---

[1] On April 15, 2004, the court screened plaintiff's amended complaint under 28 U.S.C. § 1915A and found that the amended complaint states cognizable claims against these defendants. Accordingly, the court ordered that these defendants be served with process.

1

I.  Motion To Dismiss

    A.  Failure To Exhaust Administrative Remedies

Defendants Crofoot, Sanders and Hibbits assert that plaintiff's claims against them must be dismissed for plaintiff's failure to exhaust administrative remedies with respect to those claims prior to filing suit.

A motion to dismiss for failure to exhaust administrative remedies prior to filing suit arises under Rule 12(b) of the Federal Rules of Civil Procedure. Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). In deciding a motion to dismiss for a failure to exhaust non-judicial remedies, the court may look beyond the pleadings and decide disputed issues of fact. Id. at 1120. If the court concludes that the prisoner has not exhausted non-judicial remedies, the proper remedy is dismissal of the claim without prejudice. Id.

Section 1997e(a) of Title 42 of the United States Code provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). California prison regulations provide administrative procedures in the form of one informal and three formal levels of review to address plaintiff's claims. See Cal. Code Regs. tit. 15, §§ 3084.1-3084.7. Administrative procedures generally are exhausted once a prisoner has received a "Director's Level Decision," or third level review, with respect to his issues or claims. Cal. Code Regs. tit. 15, § 3084.5. All available steps must be completed before a civil rights action is filed; exhaustion during the pendency of the litigation will not save an action from dismissal. McKinney v. Carey, 311 F.3d 1198, 1200 (9th Cir. 2002). The Ninth Circuit recently, however, has determined that denial of a grievance on purely procedural grounds serves to exhaust that grievance, in light of the institution's election not to accept the complaint despite the discretion to do so. Ngo v. Woodford, 403 F.3d 620 (9th Cir. 2005).

/////

/////

Plaintiff claims defendants Crofoot, Sanders and Hibbits violated his Eighth Amendment rights at High Desert State Prison on April 6, 2000. Compl. at 17-20.[2] It appears that plaintiff drafted a grievance concerning his claims on April 11, 2000, but the parties agree that the grievance was never answered.[3] Mot. at 7: 17-21; Opp'n at 4:10-12. The parties also agree that Plaintiff filed a second grievance on September 25, 2000, which was "screened out." Mot. at 7: 22-25; Opp'n at 4:12-13.

Defendants claim plaintiff did not submit his grievance a third time and have submitted an affidavit from the appeals coordinator at High Desert State Prison in support of their position. Mot., Ex. A at 2:5-6. In his opposition to defendants' motion, plaintiff claims, under the penalty of perjury, that he did submit the grievance a third time, but there was no response. Opp'n at 4:13-15 & Ex. A. Defendants have not filed a reply to plaintiff's opposition.

In light of Ngo, defendants' acknowledged receipt of the grievance at least once, followed by its rejection on procedural grounds, appears to satisfy the exhaustion requirement. Ngo, 403 F.3d at 631. In any case, under Wyatt, 315 F.3d at 1119, it is defendants' burden to show failure to exhaust available administrative remedies. Defendants have not met their burden of showing that plaintiff failed to exhaust available administrative remedies with respect to his claims against defendants Crofoot, Sanders and Hibbits before bringing this action. Defendants' motion to dismiss plaintiff's claims against these defendants accordingly should be denied.

B. Statute of Limitations

Defendants assert plaintiff's claims against defendants Cloud and Barton are time-barred. Plaintiff claims Cloud and Barton denied plaintiff medical care in violation of the Eighth Amendment on September 10, 1999. Am. Compl. at 7-9. The limitations period applicable to this action is a total of three years. See Cal. Civ. Proc. Code §§ 340(3), 352.1(a) (West 2002);

---

[2] Citations are to pages of the handwritten complaint attached to the form complaint.

[3] Defendants suggest that the grievance was never actually filed because there is no "filed" stamp on the document.

3

Johnson v. California, 207 F.3d 650, 654 (9th Cir. 2000) (applying both California's prior personal injury one-year statute of limitation and two-year tolling provision under section 352.1(a)).  The limitations period generally begins to run when the plaintiff knows, or should have known, of the injury that is the basis of his cause of action.  Fink v. Shedler, 192 F.3d 911, 914 (9th Cir. 1999).  This action was commenced on October 24, 2002.

At first glance, plaintiff's claims against Cloud and Barton appear to be time-barred.  However, in cases such as this, where the plaintiff must first exhaust administrative remedies prior to filing suit, the limitations period is equitably tolled until exhaustion is complete.  See Donoghue v. County of Orange, 848 F.2d 926, 930 (9th Cir. 1987) (under California law, a statute of limitations is equitably tolled when the claimant has "several formal legal remedies and reasonably and in good faith pursues one"); Conley v. Int'l Bhd. of Elec. Workers Local 639, 810 F.2d 913, 915 (9th Cir. 1987) (equitable tolling is "most appropriate when the plaintiff is required to avail himself of an alternate course of action as a precondition to filing suit").

Defendants admit that plaintiff exhausted administrative remedies with respect to his claims against defendants Cloud and Barton on May 17, 2001.  Def'ts' Separate Statement of Undisputed Facts (SUF) at 1:25-2:2; Mot., Ex. A, Attach. at 3-6 (Director's Level Decision). Because defendants fail to present any reason why plaintiff should not be entitled to equitable tolling for exhaustion of administrative remedies, their motion to dismiss plaintiff's claims against defendants Cloud and Barton as time-barred should be denied.

II. Motion For Summary Judgment

    A. Standard

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

/////

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, or other admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

1  return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433,
2  1436 (9th Cir. 1987).

3        In the endeavor to establish the existence of a factual dispute, the opposing party
4  need not establish a material issue of fact conclusively in its favor. It is sufficient that "the
5  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing
6  versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary
7  judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a
8  genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory
9  committee's note on 1963 amendments).

10        In resolving the summary judgment motion, the court examines the pleadings,
11  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if
12  any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson,
13  477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the
14  court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587.
15  Nevertheless, inferences are not drawn out of thin air, and it is the opposing party's obligation to
16  produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen
17  Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.
18  1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply
19  show that there is some metaphysical doubt as to the material facts . . . . Where the record taken
20  as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no
21  'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

22        On April 15, 2004, the court advised plaintiff of the requirements for opposing a
23  motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154
24  F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999); Klingele v.
25  Eikenberry, 849 F.2d 409 (9th Cir. 1988).
26  /////

B. Deliberate Indifference

Plaintiff claims defendants Wilson, Dunn and Baron provided plaintiff with constitutionally inadequate medical care. Defendants argue they are entitled to summary judgment as to all of plaintiff's denial of medical care claims.

A violation of the Eighth Amendment occurs if a prison official is deliberately indifferent to a prisoner's serious medical needs. Estelle v. Gamble, 429 U.S. 97, 106 (1976). Proving such a claim contains both an objective and a subjective component: an inmate must show that his condition is objectively serious and that prison officials had a sufficiently culpable state of mind. Wilson v. Seiter, 501 U.S. 294, 298-99 (1991).

A medical need is serious if "the failure to treat a prisoner's condition could result in further significant injury," apart from the "routine discomfort" that results from incarceration. Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994). Regarding the subjective component, a prison official displays deliberate indifference when he knows of and disregards an excessive risk to inmate health or safety. Farmer v. Brennan, 511 U.S. 825, 837 (1994). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id.

Before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Lab., 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06). In addition, mere differences of opinion concerning the appropriate treatment cannot be the basis of an Eighth Amendment violation. Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981). Further, the delay in medical treatment without more is insufficient to state a claim of deliberate medical indifference. Shapley v. Nevada Bd. of State Prison Com'rs, 766 F.2d 404, 408 (9th Cir. 1985). In order to state a claim of deliberate indifference, the delay must cause substantial harm. Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir. 1990).

1. Defendant Wilson

In his amended complaint, which is signed under the penalty of perjury,[4] plaintiff makes several allegations against defendant Wilson, a nurse. Am. Compl. at 9:9-14, 11:13-12:28. Only those allegations amounting to a cognizable claim under the Eighth Amendment are recounted here.

During the end of May 2001, plaintiff was scheduled to attend the prison medical clinic for an ankle injection and to obtain pills for back pain. Am. Compl. at 11:16-21. The visit was cancelled due to prison staff leaving early to evacuate their homes, evidently due to a nearby fire. Id. at 11:22-25, 12:4-6. Defendant Wilson told plaintiff she would reschedule the visit, but never did. Id. at 11:26-12. Wilson is responsible for scheduling medical visits at High Desert. Id. at 11:26-12:3.

Wilson has provided evidence that plaintiff was seen for back and ankle pain on August 9, 2001. Mot., Ex. C at 2:10-14. Wilson claims plaintiff never requested a medical visit until July 30, 2001. Id. at 1:27-2:2.

Based on plaintiff's and Wilson's contrasting accounts of when plaintiff first sought medical care, a genuine issue of material fact exists with respect to whether defendant Wilson knew plaintiff was in need of medical care in May of 2001 and deliberately failed to schedule a visit with a doctor after a previously scheduled visit was canceled. Accordingly, Wilson should not be granted summary judgment as to plaintiff's claim that she violated his Eighth Amendment rights.

2. Defendant Dunn

Plaintiff claims defendant Dunn, a dentist, was deliberately indifferent to plaintiff's serious medical needs by failing to provide plaintiff with adequate dental care.

---

[4] A plaintiff's verified complaint may be considered as an affidavit in opposition to summary judgment if it is based on personal knowledge and sets forth specific facts admissible in evidence. Lopez v. Smith, 203 F.3d 1122, 1132 n.14 (9th Cir. 2000).

Plaintiff claims he saw Dunn on some unspecified date, that Dunn filed one tooth "that had a hole in it,"[5] and, after he saw Dunn, he still had pain in one of his other teeth. Am. Compl. at 14:3-12. Defendants claim defendant Dunn was not deliberately indifferent to plaintiff and present evidence that Dunn worked on plaintiff four times between August 9 and December 5, 2001. Mot., Ex. D at 2:5-24. Dunn also presents evidence that none of the problems presented by plaintiff were serious. Id. at 2:5-20.

Plaintiff has not presented anything suggesting that he requested that defendant Dunn take any particular course of action or attempt to relieve any particular source of pain, and Dunn refused. To the extent Dunn's treatment was not effective, or to the extent Dunn simply did not choose the correct course of treatment, Dunn actions could be considered, at worst, negligence, but do not constitute deliberate indifference. Broughton, 622 F.2d at 460. Accordingly, Dunn should be granted summary judgment.

### 3. Defendant Baron

While it is not entirely clear, it appears that plaintiff claims in his amended complaint that defendant Dr. Baron was deliberately indifferent to his serious medical needs by failing to adequately supervise other medical personnel and by failing to adequately respond to plaintiff's grievances. Am. Compl. at 13:11-16, 14:17-26; cf. Opp'n at 17:18-18:2.

Defendants correctly point out that there is generally no liability under 42 U.S.C. § 1983 for failure to adequately supervise. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Defendants also correctly assert that plaintiff does not allege with particularity how any response (or lack thereof) by defendant Baron to a grievance filed by plaintiff led to plaintiff's receiving constitutionally inadequate medical care. In his opposition, plaintiff fails to present any evidence indicating defendant Baron personally did anything that might be construed as deliberate

/////

---

[5] Plaintiff also alleges the tooth filled was the wrong tooth, but does not explain why, given the cavity in the tooth that was filled.

indifference to plaintiff's serious medical needs. Accordingly, defendants should be granted summary judgment concerning plaintiff's claim against defendant Baron.

C. Excessive Force / Failure To Protect

An inmate is subjected to "excessive force" in violation of the Eighth Amendment if the degree of force used by prison officials was applied maliciously and sadistically for the very purpose of causing harm. Hudson v. McMillian, 503 U.S. 1, 6 (1992). Force used is not excessive if it was used in a good faith effort to restore discipline. Id. The Eighth Amendment's prohibition on cruel and unusual punishment also imposes on officials a duty to "take reasonable measures to guarantee the safety of the inmates." Farmer, 511 U.S. at 832 (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)). To prove a claim for failure to protect an inmate from harmful prison conditions, the inmate must show he was incarcerated under conditions posing a "substantial risk of serious harm," and that a prison official displayed "deliberate indifference" to that risk. Id. at 834.

Plaintiff alleges the following in his verified[6] amended complaint concerning defendants Crofoot, Sanders and Hibbits:

> On April 6, 2000, between 1000-1030 hours, during building D-2 lockdown shower for black inmates defendant Crofoot and Sanders informed both plaintiff and his cellmate that a signed 128-B Chrono and a interview statement with a cell search was required for release from lockdown status. Upon plaintiff and his cellmate filling out the issued form, plaintiff handed them to defendant Sanders then proceeded to prepare for showers.
>
> Once plaintiff and his cellmate were in mechanical restraints the cell-door opened as defendant Crofoot asked; who is showering upstairs". Plaintiff cellmate responded in an audible voice that he was showering upstairs at which point plaintiff proceeded to exit the cell in the direction of the lower showers which also was an everyday lockdown shower routine. Where plaintiff shower on the lower tiers and plaintiff cellmate shower on the top tier shower.

/////

---

[6] See note 4 supra.

1  As plaintiff was going the normal route but between a roll away cart that defendant Sanders had all the forms on, plaintiff was stop
2  and aggressively pulled by the arm by defendant Crofoot and again asked who is going to the upper tier shower, and for the second
3  time my cellmate spoke up loud and clear he was going upstair.

4  As plaintiff again started to walk in the direction of the lower tier shower, defendant Crofoot aggressively started pulling and
5  twisting plaintiff right arm; which caused plaintiff to say too c/o Crofoot that he wish to decline taking a shower and requested to be
6  placed back into his cell . . . do to c/o Crofoot inappropriate behavior and misconduct of inflicting unnecessary pain upon
7  plaintiff.

8  After verbally declining a shower plaintiff was told that all blacks cell had to be searched, which plaintiff temporarily forgot due to
9  defendant Crofoot misconduct.  Before plaintiff could comment defendant Crofoot just started twisting and pulling plaintiff right
10  arm again, hard and forceful, causing what appeared to feel a little dislocation of plaintiff right elbow.  In the process of defendant
11  Crofoot rage he took and (jerked) plaintiff off balance twisting plaintiff left ankle, causing it to be re-injured, as from a September
12  10, 1999 incident, which had not fully rehabilitated.

13  Then defendant Crofoot threw plaintiff against the wall, causing plaintiff to hit his face, bust his lip, and develop a knot on his left
14  eye.  Defendant Crofoot then placed on of his knee in plaintiff lower back causing what felt like a dislocation in plaintiff lumbar
15  region.

16  After excessively inflicting pain upon plaintiff, defendant Crofoot started pushing and pulling plaintiff in the direction of the lower
17  shower with plaintiff blue shirt wrapped around both his left and right wrist which were tangled up around the handcuff.

18
19  At the shower defendant Crofoot pushed plaintiff in, bumping his head and right elbow against the shower door, before he slammed
20  the door shut.  Defendant Sanders nor defendant Hibbits, say anything or try to prevent the brutal attack by Crofoot.

21  All defendant Sanders did was escorted plaintiff cellmate Patterson to the upstairs shower.  And then proceeded to search plaintiff cell
22  with defendant Crofoot help.  Upon completion of the cell search, defendant Sander[s] came to the shower were plaintiff was at and
23  untangle plaintiff shirt and took the handcuff off so plaintiff could shower.
24
25  Upon plaintiff walking to the shower nozzle and the water hit plaintiff body the shock and confusion try to set in on defendant
26  Crofoot behavior.  So as plaintiff started moving with the water hitting his body more plaintiff began to experience excruciating

> pain in his left ankle, right elbow, lower back and head throbbing. Plaintiff finish showering in which he was given over thirty minutes.

Am. Compl. at 20:22-23:2.

### 1. Defendant Crofoot

Defendants present evidence indicating that the force used by Crofoot against plaintiff was not excessive. See Mot., Ex. E. Specifically, the evidence suggests plaintiff instigated Crofoot's use of force on the way to the shower, id. at 2:17-3:2, and the injuries sustained by plaintiff were relatively minor. Id. at 3:10-23. However, the evidence presented by defendants does nothing more than establish that there is a genuine issue of material fact with respect to whether the force used against plaintiff on the way to the shower was excessive. The court will recommend that defendants' summary judgment motion be denied with respect to plaintiff's excessive force claims against defendant Crofoot.

### 2. Defendants Sanders and Hibbits

Defendants assert the following with respect to plaintiff's claims against defendants Sanders and Hibbits:

> [Plaintiff] does not claim that Officers Sanders and Hibbits used force against him, rather he claims they just watched Officer Crofoot and failed to intervene. Since there was no excessive use of force, there was no reason for Officers Sanders and Hibbits to intervene.

Mot. at 18:15-18. The court rejects this argument in light of the finding that there is a genuine issue of material fact with respect to whether defendant Crofoot used excessive force against plaintiff. Farmer, 511 U.S. at 832. Hibbits and Sanders should not be granted summary judgment.

/////
/////
/////
/////

In accordance with the above, IT IS HEREBY RECOMMENDED that:

1. The January 27, 2005 motion to dismiss or for summary judgment brought by defendants Cloud, Barton, Wilson, Baron, Dunn, Sanders, Crofoot and Hibbits be granted in part and denied in part as follows:

   A. Granted as to defendants' motion for summary judgment with respect to plaintiff's claims against defendants Baron and Dunn; and

   B. Denied in all other respects

2. Defendants Baron and Dunn be dismissed from this action.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within five days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: August 30, 2005.

_____
UNITED STATES MAGISTRATE JUDGE

1/holc2417.57